STATE OF MINNESOTA ex rel. RAILROAD AND WAREHOUSE COMMIS-
SION v. ADAMS EXPRESS COMPANY.[1]

66 — 271
;s 38LRA 225
52LRA150n

November 20, 1896.

Nos. 10,177—(39).

**Railroad and Warehouse Commission—Notice to Carrier—Constitu-
tion—Delegation of Legislative Powers—Mandamus—Service.**

That part of G. S. 1894, § 399, which provides that the courts may direct
the manner in which notice may be given to the common carrier proceeded
against, is not in violation of the constitutional provision which forbids the
delegation of legislative powers to the judiciary. Nor have legislative powers
been delegated in section 5979, which provides that the court or judge allow-
ing a writ of mandamus shall direct the manner of serving the same.

**Same—Due Process of Law.**

The provision in G. S. 1894, § 399, which authorizes the court to direct
service to be made upon the agents or servants of the carrier, is not open to
the objection that by such service an attempt is made to obtain jurisdiction
over the carrier without due process of law.

**Mandamus—Service on Corporation.**

At common law the courts have always possessed the right and authority
to direct the manner of service of writs of mandamus, and with respect to
service upon private corporations the rule has been that service should be
made on the head officer or upon the select body or person within the corpo-
ration whose province it is to put in motion the machinery necessary to se-
cure performance of the duty.

**Same—Joint-Stock Association.**

No reason exists why the rule above stated should not be applicable when
service is to be made upon a joint-stock association.

**Railroad and Warehouse Commission—Carrier — Schedules—Non-
resident Joint-Stock Association—Service on Agent.**

In the case at bar an alternative writ of mandamus was issued, on the
relation of the state railroad and warehouse commission, to compel the
Adams Express Company, a nonresident joint-stock association engaged in
business in this state as a common carrier, to print and keep for public in-
spection schedules showing the classification, rates, fares, and charges for
the transportation of property of all kinds and classes in force and charged
by it in the state, and to file a copy of such schedule with the commission.
When allowing the writ, the court directed that service be made upon one

[1] Reported in 68 N. W. 1085.

J. W. Owens, general agent of the company. Service was actually made upon Owens, but on the return day it was shown that he was not a general agent, but simply the local agent at St. Paul. No claim was made that the company had a general manager or general agent in this state, or any officer or agent superior to Owens; and it clearly appeared that all of the officers named in the articles of association, and all of the shareholders, were nonresidents of the state, and not within its borders. *Held*, that the service was sufficient to confer jurisdiction upon the court issuing the writ to proceed with the hearing.

Appeal by defendant from an order of the district court for Ramsey county, Egan, J., denying a motion to quash an alternative writ of mandamus. Affirmed.

*F. F. Davis*, for appellant.

*H. W. Childs* and *Geo. B. Edgerton*, for respondent.

COLLINS, J. This was a proceeding, by an alternative writ of mandamus, to compel the Adams Express Company, doing business as a common carrier in this state, to print, and keep for public inspection, schedules showing the classification, rates, fares, and charges for the transportation of property of all kinds and classes in force and charged by it in this state, and to file a copy of such schedules with the railroad and warehouse commission. The writ was issued on the relation of the commission, relying on the provisions of Laws 1895, c. 152, and the several laws therein referred to; and, when allowed by the court, it was ordered that service be made by delivering to, and leaving with, J. W. Owens, general agent of the company, a copy of the writ, of the petition, and of the order. On the return day the company appeared specially, and moved to quash the writ on the ground that the court had not acquired jurisdiction over the company; such motion being based on all of the proceedings and two affidavits, from which it appeared that Owens, on whom service had been made, was the local agent at St. Paul, and not the general agent, and that the company was not a corporation, but a joint-stock association, organized in the state of New York, composed of a large number of shareholding members, all nonresidents. The motion being denied, the company appeals.

In directing that service be made in a certain specified way, the court below observed the requirements of G. S. 1894, § 5979, which

provides that the court or judge, by an indorsement on the writ of mandamus, shall allow the same, designate the return day, and direct the manner of serving a copy of the writ, of the allowance thereof, and of any order or direction of the court indorsed on the writ.  It is also provided, by section 399, that whenever a common carrier refuses or neglects to obey any lawful order or requirement of the commission, made under the provisions of the statute under which it acts, an application may be made to the court, alleging such disobedience, and the court is given power to hear and determine the matter on short notice to the carrier; such notice to be served on the carrier, his or its officers, agents, or servants, in such manner as the court shall direct.

That the regulation of the business conducted by common carriers is one over which the legislature has full power to act, and that ample authority can by law be conferred upon the railroad and warehouse commission to call on any carrier doing business within our borders, whether a natural or artificial person, resident or nonresident, for such information as is absolutely essential for the proper conduct of the carrier and the protection of the public, ought not to be questioned.  Counsel does not contend to the contrary at this time, but his claim is that service of the writ made in the manner designated by the court, and as such service was attempted to be made in this instance, is insufficient to confer any jurisdiction over the company, a joint-stock association,—a co-partnership,—as is claimed; none of its shareholders having been served, or having voluntarily appeared.

It is urged, in support of this contention, that when the legislature attempted to confer upon the courts the power to determine the manner, or upon whom, writs of mandamus shall be served (section 5979), or the manner, or upon whom, the notice prescribed in section 399 shall be served, it delegated its powers to the judiciary, and that the latter branch of the government, when acting, assumes a power purely legislative, forbidden by the constitution; or, if this position is not sustainable, that any statute which empowers or permits a court to direct that service of a writ or order, based on an alleged disobedience or violation of a public duty by a common carrier, may be made upon its agents or servants, authorizes jurisdiction over such carrier to be obtained without due process of law,—also a violation of a constitutional right.   If the claim last mentioned is well founded, a non-

66 M.—18

resident corporation, association, co-partnership, or individual, engaged in business in this state as a common carrier, would seem to be beyond the reach of process of the courts or of orders emanating from the commission, unless an officer of the corporation, or a member of the association or of the partnership, or the single individual so engaged in business, should accidentally be found within our territorial limits, and personal service be thus obtained.

In substance, section 5979, regulating the service of the writ of mandamus, has been the statute of the state and of its predecessor, the territory, since the enactment of Rev. St. 1851, c. 83, § 8. A change in the phraseology was made, and the proviso added, by Laws 1875, c. 68, § 2. So far as we know, the power of the legislature to authorize the courts to direct the manner in which service of a writ of mandamus should be made, or the authority of the court to make an order as to the manner of service, have not been questioned heretofore in any of the courts of this state.

At common law the rule respecting the service of this writ upon a private corporation was that it should be made upon the head officer of the corporation, or upon that select body or person within the corporation whose province it was to put in motion the machinery necessary to secure performance of the duty commanded. The ancient strictness of the common law also required that such service should be made within the jurisdiction of that sovereignty by which the corporation was created, but this strictness was long ago relaxed so as to permit service to be made within the jurisdiction wherein the corporation had engaged in business, in all litigation connected with that business. And such is now the rule independently of statute, and no reasons exist why this relaxation should not be extended to the service of prerogative writs. Freeholders of Mercer Co. v. Pennsylvania Ry. Co., 42 N. J. Law, 490.

And there is no reason why service upon joint-stock associations should not be made in the same manner as service upon corporations. It may be, technically speaking, that such an association is nothing more than a co-partnership formed between the shareholders, but this is immaterial. It is merely a question of definition, and they have been called "quasi corporations of a private character." Morawetz, Priv. Corp. § 6. They are associations having some of the features

of common-law partnerships and many of the features of private corporations, as will be obvious upon an examination of defendant's articles of association, introduced upon the hearing below.

We are not only confident that in authorizing the court to exercise the power of directing the manner in which service shall be made, as it has in both sections (399 and 5979), there has been no delegation of legislative powers, but that the courts, in the absence of a statute expressly regulating the subject, have always possessed the right and authority to direct the manner in which prerogative writs shall be served, and, in case of corporations, upon whom they should be served. Of course, we are not to be understood as saying that this power could be exercised arbitrarily and unreasonably. It must be within the rule of the common law as to service, heretofore stated. And, if service is made upon a corporation in accordance with that rule, such service is due process of law; for the real question is, has the proper officer or representative of the corporate body received such a notice as will give it or him an opportunity to be heard?

The error of defendant's counsel is in assuming that the proceedings adopted for the regulation of common carriers are to be classed with those usually arising in courts of justice and that all steps taken must be in strict accordance with those which end in ordinary judgments, and also in assuming that, because defendant is a joint-stock association, it is wholly unlike a corporation. Certainly, as to the service of orders issued by the commission, and of prerogative writs issued by the courts, no substantial distinction can be pointed out. Each has its officers, its board of directors, its general manager, and its general and local agents. If, at common law, service could properly be made upon the head officer or upon the person within the corporation who would be expected to obey the command, and be valid, why could not service be made upon a general or local agent of this nonresident association, and be valid, provided it is fairly to be inferred from the record that he came within the description?

We have here an association of nonresidents, who have voluntarily assumed a position in the transaction of business which involves duties to the public. The duty in the present case grows out of the management of their business as a common carrier in this state, and is a public duty, which the association seeks to evade by asserting that the person upon whom service has been made is nothing more than a

local agent in the city of St. Paul. Nor has the association been candid enough to suggest that it has any general manager or agent within the state upon whom service might be made with greater probability of reaching the association, or better prospect of obtaining jurisdiction. It would seem remarkable if, under such circumstances, the courts must be declared powerless to enforce the fulfillment of the important obligations which this and every other nonresident common carrier owe to the public. In the absence of any showing that defendant association has a general manager or general agent in this state, or any officer or agent superior to the one on whom this writ was served, we are justified in assuming that he was the person whose province it was to obey the command, to cause the schedules to be printed, and to file with the commission a copy of the same. As local agent at St. Paul, he undoubtedly had in his possession the schedules required, for he could not well transact business without them. If so, applying, by analogy, to a joint-stock association the common-law rule as to service of a writ of mandamus upon a corporation, we regard the service in question as sufficient for the court to proceed. As to what the remedy will be if the rule is made absolute, and a peremptory writ issued, we are not required to express any opinion.

Counsel for the state have contended that this service could be upheld under G. S. 1894, § 5200, while counsel for defendant insists that this statute is unconstitutional. The present law is the original act as amended (Laws 1891, c. 79), and the amendatory act is attacked upon the ground that the subject is not expressed in the title. We need not determine this point, for, if the amendatory act does come within the constitutional inhibition, service was properly made under either of the sections heretofore commented on.

Order affirmed and case remanded.