THE AULT WOODENWARE COMPANY *v.* BAKER.

[No. 3,192.    Filed Oct. 24, 1900.    Rehearing denied March 12, 1901.]

MASTER AND SERVANT.—*Landlord and Tenant.—Principal and Agent.*
—In an action for personal injuries it was shown that the factory
in which plaintiff was employed when he received the injury was
being operated under a written agreement by the terms of which
the owner thereof leased the factory and grounds for a certain
term, receiving as rent therefor all of the profits made by such
lessee in operating the factory, except the sum of $2,100. The
lease further provided that in the event of the death of lessee during
the term of the lease the property should at once revert to the
lessor, by paying to lessee's heirs any balance due under the con-
tract. It was shown that the factory was operated by the lessee.
*Held,* that the instrument was in form and effect a lease, giving
lessee control of the factory, and that the action for personal in-
juries could not be maintained against the lessor.

From the Morgan Circuit Court.    *Reversed.*

*I. H. Fowler* and *O. Matthews,* for appellant.

*C. G. Renner, J. C. McNutt* and *A. M. Bain,* for appel-
lee.

HENLEY, J.—Action for damages resulting from a per-
sonal injury alleged to have been received by appellee while
in appellant's employ.

The facts upon which appellee relies, as stated in his com-
plaint, are substantially as follows:    That appellant is a
corporation organized under the laws of the state of Ohio;
that said appellant operates a factory in Morgan county,
Indiana, wherein are made buckets and other woodenware;
that in said factory there is run and operated a certain
machine known as a planer, which was driven and operated
by steam; that in connection with said planer there is used
a hood and blow-pipe for the purpose of collecting the shav-
ings and dust and removing them from the planer; that said
hood was made of heavy sheet-iron and when in proper posi-
tion was inserted at its upper end in the blow-pipe and its

lower end rested upon and over the planer; that on the 1st day of November, said hood was out of repair in various ways, being worn, torn, and defective, and had lost a certain necessary rope and pulley, and did not set firm and safe upon the planer, and on the 10th day of October, 1897, because of its defective condition, it slipped and fell upon and into the said planer and greatly injured and damaged it; that appellee had been for a long time and was on the 1st day of November, 1897, employed by appellant and was operating the planer; that, at the time said hood fell into and damaged the planer, appellee notified appellant of its impaired and unsafe condition, and appellant promised to replace it at once with a new and sound one, but said appellant at all times negligently, and without any excuse therefor, failed, neglected, and refused to replace or repair said hood; that appellee, relying upon such promises and assurances of appellant, and believing that appellant would in due time remedy said defects, continued to remain in appellant's employment, and continued in the work of operating said planer, until November 1, 1897; that on said last named date, appellee being engaged in the work aforesaid, the said hood because of its defective condition, and without any fault or negligence upon appellee's part, without any warning, suddenly fell toward and upon the said planer, threatening, as appellee believed, great injury to his person and great damage to appellant's planer, and, in order to protect his own person from harm, grasped the hood with his hands, and without any fault or negligence upon his part, and wholly on account of the defective condition of said hood, his hand and arm were drawn into the planer and were injured to such an extent that it was necessary to amputate his arm.

The cause was put at issue by a general denial filed by appellant. It was tried by a jury. The trial resulted in a verdict for $2,212 in favor of appellee. Over appellant's motion for a new trial, judgment was rendered in favor of the appellee.

By the assignment of errors the appellant challenges the ruling of the trial court in holding appellee's complaint sufficient to withstand a demurrer for want of facts, the ruling of the court in overruling appellant's motion for judgment upon the facts as found by the answers to the interrogatories returned with the general verdict, and the ruling of the court in overruling appellant's motion for a new trial.

We pass all the questions presented by the assignment of errors except that presented by the last specification, because the conclusion we have reached upon the question presented by the motion for a new trial finally disposes of this litigation so far as the appellant in the case is concerned.

At the close of the evidence the appellant asked the court to instruct the jury to return a verdict in its favor. This instruction was refused. Its refusal is made one of the reasons for a new trial. Another of the reasons urged by appellant is that the verdict of the jury is not sustained by sufficient evidence. Both reasons will be discussed together. It was material to appellee's cause of action that the relation of master and servant exist between appellee and appellant. There is no conflict in the evidence as to the fact that the factory where appellee was employed and where he received his injury was being operated at the time the injury occurred under the terms of the following instrument in writing: "This lease, made this 6th day of February, A. D. 1897, between the Ault Woodenware Company, lessor, and H. C. Davis, lessee, *witnesseth:* That said lessor, in consideration of the rents and covenants hereinafter contained, and by said lessee to be paid and performed, do hereby *grant, demise and lease* to the said lessee, in the county of Morgan and State of Indiana and described as follows: All that part of the northeast quarter of the southeast quarter of section four, township eleven north, range one east, which is situated between the Cincinnati & Martinsville or F. F. & M. R. R. on the east and the county

road on the west, containing seven and twenty-five one-hundredths acres more or less, together with all the appurtenances thereunto belonging, together with all the machinery, tools, appliances, and fixtures of every description whatever belonging to and used by us in operating our woodenware factory, situated upon the above described real estate and being the same property conveyed by William C. Compton and wife, Charles A. Ault and wife and Lorenzo D. Ault to the grantor (Harry C. Davis) by deed dated July 15, A. D. 1889, together with all moneys the said Ault Woodenware Company as successors to Compton, Ault & Company, now have invested in said woodenware factory as shown by the books of said H. C. Davis. *To have and to. hold* the same with the appurtenances unto the said lessee, from the 6th day of February, A. D. 1897, for and during the full term to January 1, 1898, next ensuing, and fully to be completed and ended on the 1st day of January A. D. 1898. *Yielding and paying* therefor, during the said term, all profits made by said H. C. Davis in operating said woodenware factory during the year 1897, excepting the sum of $2,100 which said H. C. Davis shall retain. In the event of the death of said H. C. Davis during the term of this lease the aforesaid property shall at once revert to the said Ault Woodenware Company, they paying the legal heirs of H. C. Davis any balance that may be due him according to his books, allowing him compensation from July 1, 1897, at the rate of $175 per month, or $2,100 per year as named above. *In witness whereof* the said parties to these presents have hereunto set their hands, the day and year above written. [Signed] The Ault Woodenware Company, By Chas. A. Ault, President. H. C. Davis."

It was not within the province of the jury to determine the rights of the parties to this contract; the duty to do so devolved upon the trial court. *Dutch* v. *Anderson,* 75 Ind. 35; *Spence* v. *Board, etc.,* 117 Ind. 573; *Reid* v. *Klein,* 138 Ind. 484; *Indianapolis, etc., Co.* v. *Herrman,* 7 Ind. App. 462.

Thus in the case of *Reid* v. *Klein, supra,* it is said: "In cases arising out of written contracts or instruments, it is always for the court to construe the language and make the interpretation, and it is for the purpose of informing the court's mind, when it thinks there is an ambiguity in the instrument, that evidence is heard as to the situation of the parties, the surroundings, etc., in order to construe it and lay down the rule concerning the party's rights thereunder."

The lower court in the case under consideration must have held that the contract under which Davis operated the factory, at the most, only made him the agent or manager for appellant and the same position is taken by counsel for appellee in their able brief. With this position we can not agree. The instrument was in both form and effect a lease. Under its terms Davis had complete control of all the property described therein. In the prosecution of the business he was the sole proprietor, returning to the lessor, as rent, the profits of the business conducted by him, over and above a fixed amount. The provision of the lease, that, in the event of the death of Davis he should be paid certain amounts, did not affect the relation of the parties thereto. By the terms of the lease the death of Davis terminated it, and only such profits would have accrued to the lessor as rents up to the time of his death as exceeded the ratable proportion of the $2,100 due Davis up to such time. Under the lease appellant did not have the authority to employ or discharge servants to work in the leased factory, the right of entry upon the premises was not reserved, and not one condition or restriction as to the management of the business was reserved by the lessor. If, as is contended by counsel for appellee, the man Davis was but a servant, agent, or manager, the appellant could have discharged him from its employ. The language of the instrument excludes any such construction. During the term specified in the lease, Davis, the lessee, could have maintained an action for tres-

pass against appellant if by its agents it had attempted to enter upon the leased premises or interfere with the operation of the factory. In a case in which the facts were in some respects similar to the one under consideration, this court recently held that the relation of landlord and tenant and not partnership or agency was created. *Bradley* v. *Ely*, 24 Ind. App. 2. There is no evidence showing that Davis did any act during his tenancy inconsistent with the terms of the lease. It is admitted that appellee was employed by either Clark or Steinway, who had authority and were the proper persons to discharge that duty. It is the uncontradicted evidence that the man Clark was the superintendent and Steinway the assistant superintendent of the factory, and were the servants of Davis, the person named as lessee in the lease. There is no evidence in the record even remotely tending to show that the factory was not being operated under the lease. That it was so operated is conceded. Appellee's cause of action, if any, was against the lessee. Appellant could not be held responsible for the negligence of Davis, over whose actions it exercised no control. The evidence was insufficient to sustain the verdict. It was error to refuse to direct a verdict in favor of appellant.

Judgment reversed, with instructions to the lower court to sustain appellant's motion for a new trial.